**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| **ANDRAE QUEEN** *and others similarly situated*, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-18-2625 |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Andrae Queen, who had an automobile insurance policy (the "Policy") through State Farm Mutual Automobile Insurance Company,[1] was injured in an automobile accident in St. Mary's County, Maryland involving Desiree Berry, who was not insured. Compl. ¶¶ 3, 7, 8, 10, ECF No. 1-3. Pursuant to the Uninsured Motor Vehicle Coverage provision of his Policy, Queen made a claim for personal injury damages and economic loss, including $306.23 he spent on a rental car while his vehicle was being repaired, and State Farm accepted the claim. Compl. ¶¶ 9, 12–16, ECF No. 1-3. State Farm denied coverage for the rental car cost, however. *Id.* ¶ 18. In this putative class action brought on behalf of similarly situated policyholders, Queen seeks to recover from State Farm for breach of contract (Count II) and requests a declaratory judgment that automobile

---

[1] Plaintiff alleges that "[c]laims under th[e] policy may also be processed by State Farm Fire and Casualty Company." Compl. ¶ 3. I refer to the State Farm companies, both of whom Queen named as Defendants, together as "State Farm."

insurance policies must cover loss of use expenses, including rental car costs, under their uninsured motor vehicle coverage provisions (Count III).[2] *Id.* ¶¶ 40–52.

Pending is State Farm's Motion to Dismiss, in which it argues that the Policy's Uninsured Motor Vehicle Coverage provision does not cover rental car costs or other loss of use expenses. ECF No. 21.[3] While the unambiguous language of the Policy does not include this coverage, Queen's claims are plausible nonetheless, because he has identified case law holding that the term "property damage," as it applies to vehicles, includes damages for loss of use, such as rental car costs, and Maryland law requires insurers to provide coverage for property damages claims between $250 and $15,000. State Farm's challenges to Queen's arguments do not withstand scrutiny. Therefore, State Farm's Motion IS DENIED.

**Standard of Review**

Pursuant to Rule 12(b)(6), Queen's claims are subject to dismissal if they "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"

---

[2] State Farm and Queen settled his claim for personal injury against State Farm and Berry and he voluntarily dismissed Count I. ECF No. 20. As a result, Berry no longer is a part of this action.
[3] The parties fully briefed the motion. ECF Nos. 21, 22, 23. A hearing is not necessary. *See* Loc. R. 105.6.

*Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

For purposes of resolving State Farm's Motion to Dismiss, I accept Queen's well-pleaded allegations as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). The Policy, which Queen did not attach to his Complaint but State Farm attached to its Motion, is integral to the Complaint and relied on in the Complaint, and Queen does not dispute its authenticity. Accordingly, it will be considered in resolving State Farm's motion. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Notably, where an allegation in the operative complaint conflicts with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

## Discussion

A breach of contract is "a failure without legal excuse to perform any promise which forms the whole or part of a contract...." *In re Ashby Enters., Ltd.*, 250 B.R. 69, 72 (Bankr. D. Md. 2000) (quoting *Conn. Pizza, Inc. v. Bell Atl.-Wash., D.C., Inc.*, 193 B.R. 217, 225 (Bankr. D. Md. 1996) (quoting *Weiss v. Sheet Metal Fabricators, Inc.*, 110 A.2d 671, 675 (Md. 1955)) (quotation marks omitted)). Under Maryland law, "[t]he elements of a claim for breach of contract include 'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)).

### *Contractual Language*

In this case, whether State Farm breached the contract depends on the nature of its contractual obligation for Uninsured Motor Vehicle Coverage claims, which is a matter of contract interpretation.

> Maryland courts adhere to the principle of the objective interpretation of contracts . . . ; *i.e.*, if the language employed is unambiguous, 'a court shall give effect to its plain meaning and there is no need for further construction by the court' . . . We . . . attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect.

*City of Coll. Park v. Precision Small Engines*, 161 A.3d 728, 734 (Md. Ct. Spec. App. 2017) (quoting *Walker v. Dep't of Human Res.*, 842 A.2d 53 (Md. 2004) ); *see also Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964) ("A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.").

The Uninsured Motor Vehicle Coverage provision states that the Policy "provides Uninsured Motor Vehicle coverage if 'U' is shown under 'SYMBOLS' on the Declarations Page," Policy 12, which it is, *see* Decl. P., ECF No. 21-1, at 2. The Insuring Agreement for Uninsured Motor Vehicle Coverage is as follows:

> ***We*** [State Farm] will pay compensatory damages for ***bodily injury*** and ***property damages*** an ***insured*** is legally entitled to recover from the owner or driver of an ***uninsured motor vehicle***. The ***bodily injury*** must be sustained by an ***insured***. The ***bodily injury*** and ***property damage*** must be caused by an accident arising out of the ownership, maintenance, or use of an uninsured motor vehicle as a motor vehicle.

Policy 13. It defines "property damage" as

> damage to or destruction of:
> 1. ***your car*** or a ***newly acquired car***; and
> 2. property ***owned by*** an ***insured*** while contained in ***your car*** or a ***newly acquired car***.

*Id.* Additionally, the Physical Damage Coverages section states:

> The physical damage coverages are Comprehensive coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.
>
> This policy provides:
>
> 1. Comprehensive Coverage if "D";
> 2. Collision Coverage if "G";
> 3. Emergency Road Service Coverage if "H";
> 4. Car Rental and Travel Expenses Coverage if "R1"
>
> is shown under "SYMBOLS" on the Declarations Page.

*Id.* at 16; *see also id.* at 16–17 (stating terms of car rental coverage). Notably, the Declarations Page of Queen's Policy does not include the symbol "R1" next to Uninsured Motor Vehicle Coverage. *See* Decl. P.

This language is unambiguous, and any argument to the contrary is disingenuous at best. The property damage for which State Farm will pay compensatory damages under its uninsured motorist provision only includes the damage that the car sustains. Policy 13. Lest a policyholder believe that such damage somehow includes the cost of a car rental while the car is repaired, the Policy also includes symbols on the Declarations Page that clearly show the coverage included; for Mr. Queen, the uninsured motorist coverage does not include the symbol that would indicate that car rental expenses were covered. *Id.* at 16; Decl. P.

*Statutory Requirements for Coverage*

Queen insists that, regardless of the language of the Policy, Maryland law "establish[ing] minimum, mandatory liability coverage [and] mandatory UM [uninsured motorist] coverage" requires that uninsured motorist provisions cover car rental expenses. Pl.'s Opp'n 2. It is true that the Policy language

> must be read within the context of Maryland's strong public policy favoring compensation of those injured by UM drivers. *Forbes v. Harleysville Mut. Ins. Co.,* 322 Md. 689, 697, 589 A.2d 944 (1991). "Any provisions of [an] insurance policy

5

which purport to condition, limit or dilute the unqualified uninsured motorist coverage mandated by the statute are void and unenforceable." *Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 721, 730, 436 A.2d 465 (1981). The Court of Appeals "has consistently rejected attempts by insurers, as well as insureds and the insurance commissioner, to circumvent the plain language of the required coverage provisions of the statutes dealing with automobile insurance." *Nationwide Mut. Ins. Co. v. Webb,* 291 Md. 721, 730, 436 A.2d 465 (1981)

*Buckley v. Brethren Mut. Ins. Co.*, 53 A.3d 456, 465–66 (Md. Ct. Spec. App. 2012), *aff'd,* 86 A.3d 665 (Md. 2014). Thus, insofar as the Policy impermissibly does not include "coverage required by law, the omission or exclusion is ineffective, and the insurance policy will be applied as if the minimum required coverage were contained in the policy." *Nationwide Mut. Ins. Co. v. U.S. Fid. & Guar. Co.*, 550 A.2d 69, 71 (Md. 1988).

> Relevantly, Maryland insurance law states:
>
> The uninsured motorist coverage contained in a motor vehicle liability insurance policy:
>
> (i) shall at least equal:
>
>   1. the amounts required by Title 17 of the Transportation Article; and
>
>   2. the coverage provided to a qualified person under Title 20, Subtitle 6 of this article [i.e., the Maryland Automobile Insurance Fund ("MAIF") provisions] . . . .

Md. Code Ann., Ins. § 19-509(e)(1). The relevant section of the Transportation Article provides that the insurance that drivers in Maryland are required to carry must

> provide for at least:
>
> (1) The payment of claims for bodily injury or death arising from an accident of up to $30,000 for any one person and up to $60,000 for any two or more persons, in addition to interest and costs;
>
> (2) The payment of claims for property of others damaged or destroyed in an accident of up to $15,000, in addition to interest and costs . . . .

Md. Code Ann., Transp. § 17-103(b). And, the MAIF provisions state that uninsured motorist claims, that is, claims when the identity of the vehicle and its driver cannot be established or the driver cannot be located or the driver is uninsured, can be brought against MAIF if "the claim is

6

for . . . damage to property greater than $250," with a maximum payment of "415,000 for damages to property." Ins. §§ 20-601(b)(1)(i), 20-602(a)(3).

As Queen sees it, the Maryland Court of Appeals in *D'Ambrogi v. Unsatisfied Claim & Judgment Fund Board*, 305 A.2d 136 (Md. 1973), already determined that the statutorily-required coverage for "property damage" includes coverage for rental car expenses. Pl.'s Opp'n 4. State Farm counters that "*D'Ambrogi* was based on the predecessor statute to the MAIF, and its conclusions should be limited to that now-inapplicable statute." Def.'s Reply 2. State Farm acknowledges that the *D'Ambrogi* Court held that the statute at issue in that case, Art. 66 ½ § 7-606(a), "'clearly encompasse[d] a wide variety of claims arising from a damage to property'" which included rental car costs." Def.'s Reply 3. But, in State Farm's view, the court's construction of Art. 66 ½ § 7-606(a) is uninformative and inapplicable because Art. 66 ½ § 7-606(a) "provided that the Fund would cover 'Any qualified person, who suffers *damages resulting from* bodily injury or death or damage to property arising out of the ownership, maintenance, or use of a motor vehicle,'" and the "damages resulting from" language is not a part of MAIF. *Id.* at 2–3 (quoting *D'Ambrogi*, 305 A.2d at 137) (emphasis added). According to State Farm,

> This change is significant because the prior statute in place at the time of D'Ambrogi's accident provided for coverage of "damages resulting from" damage to property. Art. 66 ½ § 7-606(a). This is the portion of the statute that the *D'Ambrogi* court found persuasive in concluding that claims resulting from damage to property were included in Uninsured Motorist coverage. 269 Md. at 199. The current statutes, however, have removed that prefatory "damages resulting from" language and simply provide for coverage of "damage to property." Md. Code Ann., Ins. § 20-601; Md. Code, Transportation § 17-103.
>
> The difference between the statutes makes *D'Ambrogi* inapplicable to this case because the Court of Appeals was interpreting entirely different statutory language. The change in language demonstrates a legislative intent to provide lesser coverage under the current MAIF scheme, as it no longer encompasses any "damages resulting from" damage to property. Rental car coverage cannot be said to be a damage to property, although it may have been a damage *resulting from* Mr. D'Ambrogi's accident.

7

Defs.'s Reply 3–4.

A more careful reading of *D'Ambrogi* is necessary. Following an automobile accident, D'Ambrogi obtained a judgment against the tortfeasor in a state court action and, when the tortfeasor failed to pay, he sought reimbursement from the Unsatisfied Claim and Judgment Fund (the "Fund"), the predecessor of MAIF. 305 A.2d at 137. The court denied his claim against the Fund for $862.91 he spent on a rental truck while his truck was being repaired. *Id.*

On appeal, D'Ambrogi argued that "damage sustained as a *result of loss of use* of a motor vehicle is properly payable from the Fund." *Id.* (emphasis added). The appellate court noted that Art. 66 ½ § 7-606(a) stated:

> Any qualified person, who suffers damages resulting from bodily injury or death or damage to property arising out of the ownership, maintenance, or use of a motor vehicle . . . (shall give notice to the Fund of an intention to make a claim for damages otherwise uncollectivle [sic]).

*Id.* (quoting Art. 66 ½ § 7-606(a)). According to the Fund,

> [f]or D'Ambrogi to succeed, . . . [§] 7-606(a)) would have to read:
> 'Any qualified person, who suffers damages resulting from bodily injury or death or (damages resulting from) damage to property * * *.'

*Id.* Additionally, it had "point[ed] out that the bracketed phrase [was] not incorporated in the act." *Id.* at 138.

The court observed that "the Act should be liberally construed so as to advance the remedy, due regard being had for the protection of the Fund and the realization of essential legislative design." *Id.* The court concluded that, pursuant to the statutory provision providing payment for "damages to property," D'Ambrogi could recover from the Fund the cost of repairing his truck, which was "damage which he suffered which stemmed from loss of use." *Id.* It reasoned:

> No extensive citation of authority is necessary to support the proposition that the measure of damages for injury to personal property which has not been

8

> entirely destroyed is the cost of repairing the property together with the value of the use of the property during the time it would take to repair it.

*Id.* (citing *Wash. B. & A. Ry. v. William A. Fingles, Inc.*, 109 A. 431 (Md. 1920); *Taylor v. King*, 213 A.2d 504 (Md. 1965); Restatement, Torts § 927(b), at 647 & cmt. 1, at 657 (1939); Tentative Draft No. 19, Restatement, Torts 2d § 927(2)(d), at 207 & cmt. m & cmt. O, at 216–18 (1973); 15 Blashfield, Automobile Law & Practice §§ 480.7, 480.9, at 29, 38 (1966)).

Significantly, not only did the Maryland appellate court not agree with the Fund that the phrase "damages resulting from" needed to appear immediately before "damage to property" for "damage to property" to include damages for loss of use, but it also did not construe the statutory language to refer to "damages resulting from damage to property." *See id.* Indeed, the statute refers to "damages resulting from bodily injury or death" and "damage to property," not "damages resulting from bodily injury, death, or damage to property," such that, as the Fund asserted, it does not explicitly cover "damages resulting from damage to property." Nonetheless, the court concluded that the phrase "damage to property" on its own (*not* the broader language "damages resulting from damage to property") included loss of use damages. *See id.*

Thus, the elimination of the phrase "damages resulting from" when MAIF was enacted did not change the holding of *D'Ambrogi* because it was not a part of the court's analysis, *see id.*, and, even when it was a part of the statute, it did not affect the meaning of "damage to property." Therefore "damage to property," which uninsured motorist coverage must cover, *see* Transp. § 17-103(b); Ins. §§ 19-509(e)(1), 20-601(b)(1)(i), 20-602(a)(3), includes "the value of the use of the property during the time it would take to repair it," a value that can include the cost of renting a replacement vehicle. *See D'Ambrogi*, 305 A.2d at 137–38; *see also Wash. B. & A. Ry. v. William A. Fingles, Inc.*, 109 A. 431, 433 (Md. 1920) ("It is said in 17 Corpus Juris, p. 877, that the measure of damages for injury to personal property, which has not been entirely destroyed, according to

some authorities, 'is the cost of repairing [the property], together with the value of the use of the property during the time it would take to repair it.'"). Based on this case law from more than forty-six years ago, and State Farm's failure to show that the law has changed, Queen has stated plausible claims, notwithstanding the unambiguous language of the Policy excluding the coverage Queen demands. Therefore, State Farm's Motion to Dismiss is denied.

## **ORDER**

Accordingly, it is, this 20th day of June, 2019 hereby ORDERED that

a. Defendants' Motion to Dismiss, ECF No. 21, IS DENIED;

b. Defendants' Answer IS DUE July 8, 2019.

/S/
Paul W. Grimm
United States District Judge